# EXHIBIT A

J7OTALPD

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALPHA CAPITAL ANSTALT,

                Plaintiff,

        v.                              19 CV 6199 (PGG)

SHIFTPIXY, INC.,

                Defendant.

------------------------------x
                                        New York, N.Y.
                                        July 24, 2019
                                        4:15 p.m.
Before:

                HON. PAUL G. GARDEPHE,

                                        District Judge

                       APPEARANCES

LAW OFFICE OF KENNETH A. ZITTER
     Attorneys for Plaintiff
BY:  KENNETH A. ZITTER

KARLINSKY LLC
     Attorneys for Defendant
BY:  MARTIN E. KARLINSKY
```

1              (Case called)
2              THE COURT:  This is a hearing on Plaintiff's
3     application of a preliminary injunction.  I'm prepared to rule
4     on the application.  However, if there's anything that the
5     lawyers would like to say, I'm happy to hear it.
6              Mr. Zitter, is there anything else you would like to
7     say?
8              MR. ZITTER:  Other than what I have in my papers, no,
9     not really, your Honor.
10             THE COURT:  Okay.  Mr. Karlinsky?
11             MR. KARLINSKY:  Your Honor, I don't want to waste the
12    Court's time.  I have said pretty much everything I have to say
13    in my papers.  I would point out to your Honor that the cases
14    cited by the Plaintiff in their reply brief are simply
15    inapposite to the case at bar.  In fact, if anything, they cut
16    our way.  The cases, for example, concerning measure of
17    damages, they simply are not applicable to this case, and they
18    are not the law anymore in the State of New York, which we put
19    forth pretty clearly, I think, in our opposition brief.
20             And I leave your Honor with only this thought about
21    that:  On delisting and insolvency, which are two of the
22    grounds that Plaintiff has urged for irreparable harm, the
23    actual and imminent -- excuse me, that harm must be, under the
24    applicable authorities, actual and imminent, insolvency must be
25    likely imminent.  That's a very difficult standard to satisfy,

1   your Honor, and I think that it hasn't been satisfied here,
2   your Honor, with one exception.  We have indicated that we
3   would like the Court's leave to file the current financial
4   statement of the company which was filed with the SEC on Monday
5   of this week.  We'll see what happens at the end of this
6   hearing, and if the case proceeds we do ask for leave to file
7   that.
8            THE COURT:  All right.
9            MR. ZITTER:  Your Honor, I will rely on the Court's
10  reading of the cases.
11           THE COURT:  Thank you.
12           This is a breach of contract action.  (Complaint,
13  Docket No. 1)  The dispute involves a promissory note and
14  conversion rights provided for in that Note.
15           Plaintiff Alpha Capital Anstalt is an investment
16  entity organized under the law of Lichtenstein.  (Absher
17  Declaration (Docket No. 7-1) paragraph 3)  Defendant Shiftpixy,
18  Inc. is alleged to be a Wyoming corporation with its principal
19  place of business in California.  (Complaint (Docket No. 1)
20  paragraph 2)
21           On March 12, 2019, Plaintiff purchased a Senior
22  Convertible Note, which I will be referring to as the "Note,"
23  from defendant in the amount of $1,266,667, pursuant to a
24  Securities Purchase Agreement.  (Feuerstein Affidavit (Docket
25  No. 4) paragraph 3)  The Note gives Plaintiff the right to

1  convert any portion of the Note to Defendant's common stock.
2  (Id. paragraph 4)
3        On four occasions between May 16, 2019, and June 3,
4  2019, Plaintiff submitted conversion requests for stock, and
5  Defendant honored those requests. (Id. paragraph 5)
6        In a June 11, 2019 form 8-K filing, Defendant
7  disclosed that it might be delisted from the NASDAQ. (Id.
8  paragraph 9) The 8-K states that on June 6, 2019, NASDAQ
9  informed Defendant that its stock price had fallen below the
10 exchange's minimum requirements of $1 per share and $35 million
11 in market value. The 8-K further states that (1) the
12 "notification of non-compliance has no immediate effect on the
13 listing or trading of [Defendant's] common stock on the
14 NASDAQ"; and (2) Defendant has until December 3rd, 2019 to meet
15 NASDAQ's minimum requirements for at least 10 consecutive
16 business days, and thus to return to full compliance. (Id.)
17        On June 20, 2019, Plaintiff submitted its fifth
18 conversion request, asking to convert $310,000 of the Note into
19 one million shares of Defendant's common stock. (Id. paragraph
20 6) To date, Defendant has not honored that request. (Id.)
21        In a June 27, 2019 Form 8-K filing, Defendant
22 announced that it would no longer honor conversions of any
23 senior convertible note, including the Note at issue in this
24 action. (Id. paragraph 7) The 8-K states that "the Company
25 has informed its convertible Note holders that it will cease

1  honoring conversion requests of the 2018 and 2019 Notes forcing
2  a voluntary default of these instruments"  (Id.)
3        In the Note, Defendant agreed that "a breach by it of
4  its obligations hereunder will cause irreparable harm to
5  [Plaintiff] and that the remedy at law for any such breach may
6  be inadequate.  [Defendant] therefore agrees that, in the event
7  of any such breach or threatened breach, the holder shall be
8  entitled to specific performance and/or temporary, preliminary
9  and/or permanent injunctive relief without posting a bond or
10 other security."  (Id. paragraph 8)
11        As to procedural history, the complaint was filed on
12 July 3rd, 2019.  Plaintiff has moved for a preliminary
13 injunction directing Defendant to (1) deliver one million
14 shares of its stock to plaintiff, thereby honoring the June 20,
15 2019 conversion request, and (2) honor all future conversion
16 requests submitted by Plaintiff under the Note.  (Complaint
17 (Docket No. 1) paragraphs 16 to 20)  On July 9, 2019, I issued
18 an order to show cause why a preliminary injunction should not
19 be entered, and I set a hearing for today.  (Docket No. 6)
20        With respect to the legal standards that apply for
21 issuance of a preliminary injunction, a court may issue a
22 preliminary injunction only where "First, the plaintiff has
23 demonstrated that either (a) a likelihood of success on the
24 merits, or (b) sufficiently serious questions going to the
25 merits to make them a fair ground for litigation.  Second, the

1  court may issue the injunction only if the plaintiff has
2  demonstrated that he is likely to suffer irreparable injury in
3  the absence of an injunction.  Third, a Court must consider the
4  balance of hardships between the plaintiff and defendant and
5  issue the injunction only if the balance of hardships tips in
6  the plaintiff's favor.  Finally, the court must ensure that the
7  public interest would not be disserved by the issuance of a
8  preliminary injunction."  Salinger v. Colting, 607 F.3d 68,
9  79-80 (2d Cir. 2010).

10  "The typical preliminary injunction is prohibitory and
11  generally seeks only to maintain the status quo pending a trial
12  on the merits.  A mandatory injunction, in contrast, is said to
13  alter the status quo by demanding some positive act."  Tom
14  Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d
15  207, 34 (2d Cir. 1995).  Here, Plaintiff seeks a mandatory
16  injunction.  "This distinction is important because [the Second
17  Circuit has] held that a mandatory injunction should issue only
18  upon a clearing showing that the moving party is entitled to
19  the relief requested, or where extreme or very serious damage
20  will result from a denial of preliminary matter relief."  (Id.)
21  I will now consider whether Plaintiff has made the
22  necessary matter showing as to irreparable harm.
23  "A showing of irreparable harm is the single most
24  important prerequisite for the issuance of a preliminary
25  injunction."  Faiveley Transportation Malmo AB v. Wabtec Corp.,

1   559 F.3d 110, 118 (2d Cir. 2009).  "To satisfy the irreparable
2   harm requirement, Plaintiff must demonstrate that absent a
3   preliminary injunction [it] will suffer an injury that is
4   neither remote nor speculative, but actual and imminent, and
5   one that cannot be remedied if a court waits until the end of
6   trial to resolve the harm."  Grand River Entertainment Six
7   Nations Limited v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007).
8   "Where there is an adequate remedy at law, such as an award of
9   money damages, injunctions are unavailable except in
10  extraordinary circumstances."  Moore v. Consolidated Edison
11  Company of New York, 409 F.3d 4506, 510 (2d Cir. 2005).

12            Let me address the significance of the reference to
13  irreparable harm in the Note.

14            As I said at the outset, in the Note the parties agree
15  that Defendant's "breach [of the Note] will cause irreparable
16  harm to [Plaintiff] and that the remedy at law for any such
17  breach may be inadequate.  [Defendant] therefore agrees that in
18  the event of such breach, [Plaintiff] shall be entitled to
19  [preliminary injunctive] relief."  (Feuerstein Affidavit
20  (Docket No. 4) at paragraph 8)

21            While this provision is relevant to the Court's
22  consideration of whether Plaintiff will suffer irreparable harm
23  in the absence of an injunction, it "does not control the
24  question of whether preliminary injunctive relief is
25  appropriate."  Baker's Aid v. Hussmann Foodservice Co., 830

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

1   F.2d 13, 16 (2d. Circuit, 1987).  Rather, such a provision is
2   "merely one factor that must be considered in deciding whether
3   irreparable harm would result if an injunction did not issue."
4   Markovits v. Venture Info Capital, Inc., 129 F.Supp.2d 647, 661
5   (S.D.N.Y. 2001).
6            Accordingly, Plaintiff "cannot rely on the contract
7   provision alone to demonstrate irreparable harm."
8   International Creative Management, Inc. v. Abate, 2007 WL
9   950092, *6 (S.D.N.Y. March 8, 2007).  Indeed, courts in this
10  Circuit frequently deny applications for preliminary
11  injunctions – despite the presence of such contractual
12  provisions – where plaintiffs have not independently
13  demonstrated irreparable harm.  See, e.g., Baker's Aid, 830
14  F.2d at 16, (denying preliminary injunction where contract
15  contained a similar provision, because plaintiff had not shown
16  irreparable harm); also, International Creative Management,
17  2007 WL 950092 at *7 (same); Life Techs Corp. v. AB Sciex Ltd.,
18  2011 WL 1419612, at *8, (S.D.N.Y. April 11, 2011) (same).
19           The Court must therefore go on to consider whether
20  Plaintiff has proffered additional facts, separate from the
21  provision in the Note, demonstrating that it will suffer
22  irreparable harm in the absence of an injunction.
23           Plaintiff argues that it has no adequate remedy at law
24  because its damages will be difficult to prove.  According to
25  Plaintiff, because Defendant's stock price has fluctuated since

1   Plaintiff's purchase of the Note, "it will be extremely
2   difficult to prove when [Plaintiff] would have sold the common
3   stock it did not receive from [Defendant]."  (Plaintiff's Brief
4   (Docket No. 5) page 12)
5           This argument is not persuasive.  It is a "fundamental
6   principle that damages for breach of contract should put the
7   plaintiff in the same economic position he would have been in
8   had the defendant fulfilled the contract."  Lucente v.
9   International Business Machines Corp., 310 F.3d, 243, 262 (2d
10  Cir. 2002) (stating that "New York's damages rules is precisely
11  the same when the breach of contract is non-delivery of shares
12  of stock").
13          "Where the breach involves the deprivation of an item,
14  such as a stock, with a determinable market value, the market
15  value at the time of the breach is the measure of damages."
16  Sharma v. Skaarup Ship Management Corp., 916 F.2d 820, 825 (2d
17  Cir. 1990).  Courts have therefore rejected the contention that
18  in order to calculate damages it would be necessary to
19  speculate when and if a Plaintiff would sell its stock.  See,
20  e.g., Laurus Master Fund Ltd. v. Valcom, Inc., 2002 WL 432686,
21  at *3 (S.D.N.Y. March 19, 2002) ("If we were to find
22  irreparable harm based on this argument alone then every case
23  involving a contract to convert stock would amount to per se
24  irreparable harm.").
25          That is a quote from LG Capital Funding, LLC v. Vape

1    Holdings, Inc., 2016 WL 3129185, at *4, (E.D.N.Y. June 2nd,
2    2016).
3             Accordingly, the argument that money damages are not
4    adequate in cases involving a breach of a contractual provision
5    to provide stock is not persuasive.
6             Plaintiff also argues, however, that it faces
7    irreparable harm because Defendant is insolvent and money
8    damages will not be collectible at the conclusion of the case.
9    (Plaintiff's brief (Docket No. 5) at pages 13 and 14)
10            Although the general rule is that a monetary injury
11   does not constitute irreparable harm, there is an exception in
12   "situations involving obligations owed by insolvents."
13   Brenntag International Chemicals Inc. v. Bank of India, 175
14   F.3d 245, 250 (2d Cir. 1999). "Before a court will grant
15   relief under this exception, however, the plaintiff must show
16   that that the risk of insolvency is likely and imminent." LG
17   Capital Funding, 2016 WL 3129185, at *4.
18            "The equity test of insolvency equates insolvency with
19   a lack of liquid funds or the inability to pay one's debts in
20   the ordinary course of business as the debts mature." See,
21   Investors Protection Corp. v. Global Arena Capital Corp., 164
22   F.Supp. 3d 531, 537 (S.D.N.Y. 2016). "The moving party carries
23   a heavy burden in demonstrating current or imminent insolvency
24   at the preliminary injunction stage, and courts in this Circuit
25   have 'denied applications for a preliminary injunction even in

1    the face of evidence that a defendant was in a very weak
2    financial condition.'"  Coastal Investors Partners LLC v. DSG
3    Global, Inc., 2017 WL 3605502, at *3 (S.D.N.Y. July 31, 2017)
4    (quoting Union Capital LLC v. Vape Holdings, Inc., 2016 WL
5    8813991, at *3 (S.D.N.Y. March 9, 2016); LG Capital Funding,
6    LLC v. PositiveID Corp., 2017 WL 2556991, at *6 (E.D.N.Y. June
7    12, 2017); and LG Capital Funding LLC, 2016 WL 3129185, at *4).
8         Here, Plaintiff points to Defendant's April 15, 2019
9    form 10-Q filing as evidence that Defendant is insolvent.  The
10   10-Q states that Defendant's total current assets are about
11   $10.4 million and that its total current liabilities are about
12   $20.9 million.  (10-Q (Docket No. 4-8) at page 3)  In the 10-Q,
13   the Defendant also states that there is "substantial doubt as
14   to its ability to continue as a going concern within one year
15   from the issuance date of the financial statements."  (Id. at
16   2)
17        Numerous courts in this Circuit have held, however,
18   that similar evidence is insufficient to demonstrate that a
19   defendant is currently or imminently insolvent.  See, e.g.,
20   Union Capital LLC, 2016 WL 8813991, at *3, (imminent insolvency
21   not demonstrated where defendant had current assets of $0.7
22   million, current liabilities of $1 million, and had expressed
23   doubt in 10-Q as to whether it could continue as a going
24   concern); also, Coastal Investment Partners, LLC, 2017 WL
25   3605502, at *3 (imminent insolvency not demonstrated where

1   Defendant had current assets of $0.3 million, current
2   liabilities of $8.2 million, and had expressed doubt in 10-Q as
3   to whether it could continue as a going concern); also, LG
4   Capital Funding LLC, 2016 WL 3129185, at *4 (imminent
5   insolvency not shown where defendant had current assets of $0.7
6   million, current liabilities of $1 million, and had expressed
7   doubt in 10-Q as to whether it could continue as a going
8   concern); also, LG Capital Funding LLC, 2017 WL 2556991, at *6
9   (imminent insolvency not shown where defendant had current
10  assets of $1.1 million, current liabilities of $11.4 million,
11  and had expressed doubt about whether it could continue as a
12  going concern)).
13          Moreover, Defendant's SEC filings from earlier this
14  year indicate that its business is improving.  For the
15  six-month period ending on February 28, 2019, Defendant brought
16  in more than $23.7 million in revenue, up from $14.4 million
17  year over year.  (10-Q (Docket No. 4-8) at 4)  Defendant's
18  operating loss for that period dropped from $6.1 million in
19  2018 to $3.5 million in 2019.  (Id.)  While Defendant's current
20  liabilities dwarf its current assets, the gap between
21  liabilities and assets appears to be closing.  Current assets
22  remained at about $10.4 million between August 31, 2018 and
23  February 28, 2019, but current liabilities dropped from $23.6
24  million on August 31, 2018, to $20.9 million on February 28,
25  2019.  (Id. at 3)

Case 1:19-cv-06704-PGG   Document 14-1   Filed 08/01/19   Page 14 of 16        13
J7OTALPD

1           In similar circumstances, where a defendant has
2    continued to generate substantial revenue, courts in this
3    Circuit have rejected arguments that a defendant is imminently
4    insolvent.  See, e.g., Coastal Investors Partners, LLC, 2017 WL
5    3605502, at *3 (defendant not imminently insolvent where it
6    continued to generate revenue); LG Capital Funding, LLC, 2017
7    WL 2556991, at *6 (same); see also, Union Capital LLC, 2016 WL
8    8813991, at *4 (defendant not imminently insolvent where it
9    "anticipates that it will continue to grow revenues and
10   progress towards achieving profitability").
11          I conclude that Plaintiff has merely shown that there
12   is a possibility that Defendant will be insolvent by the
13   conclusion of this action.  "That mere possibility is
14   speculative and cannot satisfy the [Plaintiff's] burden to show
15   that [it] is likely to suffer irreparable harm if equitable
16   relief is denied."  See, Meringolo v. Power2ship, 2003 WL
17   21750009 at *5 (S.D.N.Y. July 28, 2003).  Under these
18   circumstances, the fact that the parties agreed to a
19   contractual provision stating that a breach of the Note would
20   result in irreparable harm is not sufficient to justify a
21   preliminary injunction.  This is particularly true here given
22   that Plaintiff seeks a mandatory injunction, which requires the
23   movant to meet a more stringent standard.
24          Accordingly, Plaintiff's application for a preliminary
25   injunction is denied.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:19-cv-06704-PGG   Document 14-1   Filed 08/01/19   Page 15 of 16    14
J7OTALPD

1          While I have denied Plaintiff's application for a
2    preliminary injunction, that is in no way a comment on my
3    evaluation of the Plaintiff's likelihood of success on the
4    merits of its claims.  It seems clear from what I read so far
5    that the Defendant has breached its obligations under the Note.
6    There is a suggestion in the papers that Defendant intends to
7    argue that Plaintiff was manipulating the market for the
8    Defendant's stock and was engaged in short-selling the
9    Defendant's stock.  Plaintiff denies that, and I'm not aware at
10   this point of any evidence that would support such a claim.
11         But suffice it to say that I am willing to entertain
12   an expedited schedule for any discovery that is necessary, as
13   well as motion practice.  Is the Plaintiff requesting any sort
14   of expedited treatment with respect to discovery and motion
15   practice?
16         MR. ZITTER:  Yes, your Honor, we would like to do this
17   as quickly as possible.
18         THE COURT:  All right.  Could you tell me in your view
19   what discovery is necessary, if any?
20         MR. ZITTER:  Off the top of my head, your Honor, I
21   can't think of any discovery that's necessary.
22         THE COURT:  Mr. Karlinsky, what do you say?
23         MR. KARLINSKY:  Well, your Honor, we would need to see
24   the Plaintiff's trading records, for one thing, and we
25   certainly need to take a deposition of the responsible officer

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

| | |
|---|---|
| 1 | who made the decisions with respect to the conversion of shares |
| 2 | and the sale of the shares.  And beyond that, Judge, it's hard |
| 3 | to say without taking those initial steps.  We don't object to |
| 4 | an expedited discovery schedule planning for an early trial on |
| 5 | the merits for the consolidation under Rule 65. |
| 6 |       THE COURT:  What do you say, sir? |
| 7 |       MR. ZITTER:  Your Honor, I think we could do this in |
| 8 | two weeks. |
| 9 |       THE COURT:  Well, let me do this:  As I said, I'm |
| 10 | sympathetic to your application for expedited relief.  What I |
| 11 | ask you to do is talk with your adversary, attempt to reach |
| 12 | agreement on what might make sense.  If you can reach |
| 13 | agreement, let me know and I will likely so order it.  If you |
| 14 | can't reach agreement, let me know and I will resolve the |
| 15 | issue.  Okay? |
| 16 |       MR. ZITTER:  Thank you, your Honor. |
| 17 |       THE COURT:  All right.  Mr. Karlinsky, anything else? |
| 18 |       MR. KARLINSKY:  Nothing else, your Honor. |
| 19 |       THE COURT:  All right.  Thank you both. |
| 20 |       MR. ZITTER:  Thank you, your Honor. |
| 21 |       THE COURT:  And you'll let me know by Tuesday how you |
| 22 | wish to proceed? |
| 23 |       MR. ZITTER:  Sure. |
| 24 |       THE COURT:  Okay. |
| 25 |       MR. KARLINSKY:  Certainly, your Honor. |