UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ X

| | |
|---|---|
| Dominion Capital LLC, | |
| Plaintiff, | 19 Civ. 6704 (PGG) |
| -against- | |
| ShiftPixy, Inc., | |
| Defendant. | |

------------------------------------------------ X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE WITH A PRELIMINARY INJUNCTION**

SULLIVAN & WORCESTER LLP
Peter R. Ginsberg
David E. Danovitch
1633 Broadway, 32nd Floor
New York, NY 10019
Telephone:  (212) 660-3000
Facsimile:  (212) 660-3001
prginsberg@sullivanlaw.com

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 1

I.  PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION DIRECTING DEFENDANT IMMEDIATELY TO ISSUE SHARES OF ITS COMMON STOCK TO PLAINTIFF IN ACCORDANCE WITH THE CONVERSION DEMAND ...................... 1

    A.  The Concrete Steps That Defendant Has Taken to Implement Its Stock Buyback Program Creates an Immediate Threat to Plaintiff as Well as to the Company ...... 1

    B.  That Damages Potentially Could Be Calculable Does Not Alleviate the Irreparable and Permanent Harm Plaintiff Would Imminently Suffer .................... 2

II. PLAINTIFF WILL SUFFER IRREPARABLE DAMAGE AS A RESULT OF DEFENDANT'S IMMINENT INSOLVENCY ................................................................. 4

    A.  The Contractual Provisions are Persuasive in Determining that the Damages are Irreparable ................................................................................................................ 4

    B.  Defendant's Financial Condition Indicates that Defendant is Facing Imminent Insolvency ................................................................................................................ 5

CONCLUSION ........................................................................................................................ 8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alpha Capital Anstalt v. Advanced Cell Tech., Inc.*,
  2011 U.S. Dist. LEXIS 157297 (S.D.N.Y. Oct. 14, 2011) ..........................................................6

*Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*,
  No. 02cv10237 (GBD), 2003 U.S. Dist. LEXIS 2077 (S.D.N.Y. Feb. 11, 2003).......................5

*Boston Laser, Inc. v. Qinxin Zu,*
  No. 3:07-CV-0791 (TJM/DEP), 2007 U.S. Dist. LEXIS 78021 (N.D.N.Y. Sept. 21, 2007)......5

*Brenntag Int'l Chems., Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999)................................................................................................3, 4, 6

*Castle Creek Tech. Partners v. Cellpoint Inc.*,
  No. 02 Civ. 6662 (GEL), 2002 U.S. Dist. LEXIS 23760 (S.D.N.Y. Dec. 9, 2002)....................6

*Coastal Inv. Partners, LLC v. Dsg Global, Inc.*,
  No. 17 Civ. 4427 (DAB), 2017 U.S. Dist. LEXIS 121095 (S.D.N.Y. July 31, 2017) ............ 5-6

*CRP/Extell Parcel I, L.P. v. Cuomo,*
  294 Fed. App'x 779 (2d Cir. 2010)................................................................................3, 4, 5, 6

*Laurus Master Fund. Ltd. v. Valcom, Inc.*,
  No. 02-CV-1480 (WK), 2002 WL 432686 (S.D.N.Y Mar. 19, 2002) .......................................3

*LG Capital Funding, LLC v. Vape Holdings, Inc.*,
  No. 16-CV-2217 (CBA) (LB), 2016 WL 3129185 (E.D.N.Y. June 1, 2016) ........................2, 3

*Markovits v. Venture Info Capital, Inc.*,
  129 F.Supp.2d 647, 661 (S.D.N.Y. 2001) .................................................................................5

*North Atlantic Instruments, Inc. v. Haber*,
  188 F.3d 38 (2d Cir. 1999)..........................................................................................................5

*R.S. v. Bd. of Educ. Shenendehowa Cent. Sch. Dist.*,
  2017 U.S. Dist. LEXIS 124009, 2017 WL 3382159 (N.D.N.Y. 2017) .................................3, 4

*SEC v. Princeton Econ. Int'l Ltd.*,
  73 F. Supp. 2d 420, 425 (S.D.N.Y. 1999) ..............................................................................3, 4

*SV Investment Partners, LLC v. ThoughtWorks, Inc.*,
  7 A.3d 973 (Del. Ch. 2010).........................................................................................................7

*Xiotech Corp. v. Express Data Prod. Corp.*,
    No. 13-CV-861, 2013 U.S. Dist. LEXIS 114453, 2013 WL 4425130,
    (N.D.N.Y. Aug. 14, 2013) ..................................................................................................3, 4

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999)..................................................................................................5

**PRELIMINARY STATEMENT**

Plaintiff Dominion Capital LLC ("Dominion Capital" or "Plaintiff"), by its undersigned counsel, submits this Reply Memorandum of Law in Further Support of its Order to Show Cause for a Preliminary Injunction ("PI").  Defendant ShiftPixy, Inc. ("PIXY" or "Defendant") has announced its intention to repurchase PIXY shares, which would violate its express covenant to Plaintiff to refrain from such action and most likely forever compromise both Plaintiff's rights and PIXY's viability as it will deplete Defendant's cash position, thus making it even more unlikely that it could satisfy a judgment.

Plaintiff seeks an injunction (1) requiring Defendant immediately to effectuate Plaintiff's conversion rights and deliver to Plaintiff the PIXY common stock due and owing pursuant to the Conversion Demand and (2) preventing Defendant from completing the proposed buyback.  In the absence of the requested relief, Plaintiff assuredly will be deprived of its rights, resulting in irreparable harm.

**ARGUMENT**

**I.   PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION DIRECTING DEFENDANT IMMEDIATELY TO ISSUE SHARES OF ITS COMMON STOCK TO PLAINTIFF IN ACCORDANCE WITH THE CONVERSION DEMAND**

**A.   The Concrete Steps That Defendant Has Taken to Implement Its Stock Buyback Program Creates an Immediate Threat to Plaintiff as Well as to the Company**

Defendant contends there is no threat of imminent harm while admitting that its Board has approved the buyback program and taken "preliminary steps" towards the buyback, ShiftPixy's Memorandum of Law in Opposition to the Motion for Preliminary Injunction (ECF 14; "Opposition Br.") at p. 6, ignoring that the buyback clearly would violate Plaintiff's rights and could doom the Company.

Such a cavalier rationalization of its activities is precisely why judicial action is required. Defendant's actions, far from being "preliminary," include opening a brokerage account, establishing accounting arrangements, advising its accountants about the buyback program, and filing the prerequisite SEC disclosures. Opposition Br. at p. 6. Defendant's representations that it "will not commence share repurchases under the program until it has determined that to do so would be in its current interest" and that "[i]t plans to disclose this publicly" if it is appropriate to do so, Opposition Br. at p. 7, ignore the reality that it has no right to engage in the repurchase program, that it enticed Plaintiff's funding based on the representation that such action would not occur, and that the buyback would not only make it impossible in the future for any other entity to rely on Defendant's covenants—thus making future funding virtually impossible—but would also eliminate its cash reserves.

In sum, the ease with which Defendant could transition from the "preliminary" steps already taken into implementing the program, and the impact it would have on Defendant's cash position and ability to repay Plaintiff, is precisely why emergency relief is needed.

> **B.     That Damages Potentially Could Be Calculable Does Not Alleviate the Irreparable and Permanent Harm Plaintiff Would Imminently Suffer**

Defendant asserts that calculable money damages are sufficient to compensate Plaintiff for any harm the Company may cause. Opposition Br. at p. 12 (citing *LG Capital Funding, L.L.C. v. Vape Holdings, Inc.*, No. 16-CV-2217 (CBA) (LB), 2016 WL 3129185, at *4 (E.D.N.Y. June 1, 2016). This contention, however, misses the mark, perhaps purposefully ignoring Defendant's own dire financial condition, irresponsible actions and, ultimately, that a money judgment would be a pyrrhic victory at best.

Plaintiff can prove at a hearing that Defendant has placed itself in a position that will make recovery virtually impossible and that Defendant continues down a path of irresponsible

2

governance that only exacerbates its dire financial condition.  While "[a]s a general matter, financial injury does not constitute an irreparable loss," the Second Circuit "has held that an exception exists to this general rule and that the finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency."  *See R.S. v. Bd. of Educ. Shenendehowa Cent. Sch. Dist.*, 2017 U.S. Dist. LEXIS 124009, at *4, 2017 WL 3382159 (N.D.N.Y. 2017) (citing *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) and quoting *Xiotech Corp. v. Express Data Prods. Corp.*, No. 13-CV-861, 2013 U.S. Dist. LEXIS 114453, 2013 WL 4425130, at *3 (N.D.N.Y. Aug. 14, 2013) (citing *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781-82 (2d Cir. 2010)).  Furthermore, "a financial injury constitutes irreparable harm when 'there is a substantial likelihood that the judgment will be uncollectible, so the parties cannot be returned to the positions previously occupied.'"  *Shenendehowa*, 2017 U.S. Dist. LEXIS 124009, at *4 (quoting *SEC v. Princeton Econ. Int'l Ltd.*, 73 F. Supp. 2d 420, 425 (S.D.N.Y. 1999)).

Plaintiff does not contend that the calculation of damages based on the contractual breach would not be possible or that "it would [be] necessary to speculate when and if a plaintiff would sell its stock." *LG Capital Funding*, 2016 WL 3129185, at *4 (citing *Laurus Master Fund, Ltd. v. Valcom, Inc.*, No. 02-CV-1480 (WK), 2002 WL 432686, at *3 (S.D.N.Y Mar. 18, 2002)).  Rather, such calculation would prove to be irrelevant.  The question is not whether the damages are ascertainable but whether, given Plaintiff's likely inability to collect on a damages award, Plaintiff is entitled to a preliminary injunction in order to prevent the irreparable damage which surely will occur if emergency relief is not granted.

If Defendant were to make the proposed buyback, it would need to pay out approximately $7.3 million, which is near the amount owed to Plaintiff and other noteholders, and would exceed

3

Defendant's cash assets on hand. *See* Affidavit of Mikhail Gurevich (ECF 6; "Gurevich Aff.") at ¶ 46. The buyback would exhaust Defendant's cash reserves and make it virtually impossible for Defendant to have sufficient funds to pay Plaintiff the amounts due and owing on the Notes. Gurevich Aff. ¶ 47.

Absent a preliminary injunction, any judgment will be uncollectible, as Defendant will have used up any cash reserves with which it could pay any future judgments. *See SEC v. Princeton Econ. Int'l Ltd.*, 73 F. Supp. 2d 420, 425 (S.D.N.Y. 1999). In order to return the parties to the positions they previously occupied, a preliminary injunction directing the share conversion and enjoining the Company's proposed buyback must be granted.

## II. PLAINTIFF WILL SUFFER IRREPARABLE DAMAGE AS A RESULT OF DEFENDANT'S IMMINENT INSOLVENCY

As stated above, while financial injury generally does not support a finding of irreparable loss, that rule is inapplicable when the obligation is owed by an insolvent party "or a party on the brink of insolvency." *See Shenendehowa*, 2017 U.S. Dist. LEXIS 124009 at *4 (citing *Brenntag Int'l Chems.*, 175 F.3d 245, 249 (2d Cir. 1999) and quoting *Xiotech Corp. v. Express Data Prods. Corp.*, No. 13-CV-861, 2013 U.S. Dist. LEXIS 114453, 2013 WL 4425130, at *3 (N.D.N.Y. Aug. 14, 2013) (citing *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781-82 (2d Cir. 2010)). Defendant's imminent insolvency satisfies Plaintiff's burden to show irreparable harm that only injunctive relief could remedy.

### A. The Contractual Provisions are Persuasive in Determining that the Damages are Irreparable

Defendant advances the legally flawed argument that the Court can and should ignore the Parties' covenant that a breach of Plaintiff's right to convert its Notes into common shares constitutes irreparable harm. Opposition Br. p. 15.

4

Rather than the express contract provision being a non-issue, as Defendant asserts, contractual language is "one factor that *must* be considered in deciding whether irreparable harm would result if an injunction did not issue." *Markovits v. Venture Info Capital, Inc.*, 129 F. Supp. 2d 647, 661 (S.D.N.Y. 2001) (emphasis added). Indeed, such a covenant can be deemed an admission by the promissor to which the Court can give "great weight" in evaluating the existence of irreparable harm in the event of breach. *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, No. 02cv10237 (GBD), 2003 U.S. Dist. LEXIS 2077, at *15-16 (S.D.N.Y. Feb. 11, 2003); *see, e.g.*, *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999); *Boston Laser, Inc. v. Qinxin Zu*, No. 3:07-CV-0791 (TJM/DEP), 2007 U.S. Dist. LEXIS 78021, at *38-40 (N.D.N.Y. Sept. 21, 2007).

The Court must view the Parties' agreement with regard to the irreparable injury flowing from a breach in the context of Defendant's struggling financial condition and the virtual impossibility that Defendant in the future will be able to attract investors if it is not required now to abide by its agreements. Thus, in the context of the current situation, the binding contractual language weighs heavily in favor of finding that Plaintiff will suffer irreparable harm if the requested injunctive relief is not granted.

### B. Defendant's Financial Condition Indicates that Defendant is Facing Imminent Insolvency

While there is a general rule that the availability of monetary damages to remedy a breach obviates the need for injunctive relief, that rule gives ground when a looming insolvency of the breaching party presents "a substantial chance that upon the final resolution of the action the parties cannot be returned to the positions they previously occupied." *Coastal Inv. Partners, L.L.C. v. Dsg Glob., Inc.*, No. 17 Civ. 4427 (DAB), 2017 U.S. Dist. LEXIS 121095, at *6-*7

(S.D.N.Y. July 31, 2017) (quoting *Cuomo*, 394 Fed. App'x at 782). When such a condition exits, a looming insolvency "may render otherwise compensable harm irreparable." *Cuomo*, 394 Fed. App'x at 782 (citing *Brenntag Int'l Chems., Inc.*, at 249-50).

A large difference between projected income and company liabilities is a compelling indication that a company is facing imminent insolvency. *See Castle Creek Tech. Partners v. Cellpoint Inc.,* No. 02 Civ. 6662 (GEL), 2002 U.S. Dist. LEXIS 23760, at *10-*12 (S.D.N.Y. Dec. 6, 2002); *see also Alpha Capital Anstalt v. Advanced Cell Tech., Inc.*, 2011 U.S. Dist. LEXIS 157297 (S.D.N.Y. Oct. 14, 2011) (finding that a large difference between net worth and accumulated deficits supported a finding of irreparable harm). Defendant's recent quarterly Form 10-Q SEC filing reveals that Defendant faces a drastic gap between its liabilities and projected income: "[Defendant] has *incurred recurring losses* in an accumulated deficit of $28.3 million as of February 28, 2019." Gurevich Aff. ¶ 37 (emphasis added). That report continued: "[t]hese conditions raise substantial doubt as to [Defendant's] ability to continue as going concern within one year from issuance date of the financial statements." *Id.* On its 10-Q Quarterly Report for the quarter ended May 31, 2019, Defendant reported ballooning current liabilities of $22.2 million and current assets of only $13.2 million. Additionally, Defendant continues to report a negative net worth of $3.42 million. Finally, as Defendant reports in its most recent financial disclosures:

> As of May 31, 2019, the Company had cash of $2.9 million and a working capital deficiency of $9.0 million. During the nine months ended May 31, 2019, the Company used approximately $1.6 million of cash in its operations, of which $1 million was attributed to the mobile application development costs. The Company has incurred recurring losses resulting in an accumulated deficit of $35.6 million as of May 31, 2019. These conditions raise substantial doubt as to its ability to continue as going concern within one year from issuance date of the financial statements.
>
> …

6

> The ability of the Company to continue as a going concern is dependent upon generating profitable operations in the future and/or obtaining additional funds by way of public or private offering to meet the Company's obligations and repay its liabilities when they become due.

Defendant's financial disclosures and the persistent gap between its liabilities and projected income signals that Defendant is facing imminent insolvency.

Despite its inability to meet its financial obligations, Defendant persists in its intention to commence a stock buyback.  Gurevich Aff. ¶ 44.  Not only would Defendant's proposed action constitute a breach of the June 2018 Note and December 2018 Note,[1] it would eliminate any assets Defendant may have to satisfy Plaintiff's claims.  Thus, Defendant has publicly admitted that, in defiance of its contractual obligations, it intends to eliminate its cash reserves and use what little assets it has to engage in an activity prohibited contractually and under state law.

Finally, Defendant has publicly acknowledged that it is defaulting on its debts, thereby accelerating defaults that will strain Defendant's finances excessively and well beyond what its projected income can accommodate.  Gurevich Aff. ¶ 26.  This will widen the gap between Defendant's income and liabilities and eliminate any possibility that Defendant can remain solvent and certainly that it can satisfy its obligations to Plaintiff in the absence of immediately recognizing the right to convert.

---

[1] Section 7 of each the June 2018 Note and the December 2018 Note contains those documents' negative covenants.  Section 7(g) of the June 2018 Note and December 2018 Note provides as long as any portion of either of those Notes remain outstanding, PIXY shall not directly or indirectly "repay, repurchase or offer to repay, repurchase or otherwise acquire more than a *de minimis* number of shares of its Common Stock or Common Stock Equivalents other than as to (i) the Conversion Shares or Warrant Shares as permitted or required under the Transaction Documents and (ii) repurchases of Common Stock or Common Stock Equivalents of departing officers and directors of the Company, provided that such repurchases shall not exceed an aggregate of $100,000 for all officers and directors during the term of this Note."

Such action also would constitute a breach of the general principal that a corporation is prohibited from redeeming its shares if its capital is impaired.  *See, e.g.*, *SV Inv. Partners, L.L.C. v. Thoughtworks, Inc.*, 7 A.3d 973 (Del. Ch. 2010) (*aff'd* 37 A.3d 205 (Del. 2011)).

**CONCLUSION**

For the above reasons, Plaintiff respectfully requests that the Court enter an Order directing Defendant immediately to issue 1,600,496 shares of its common stock to Plaintiff in accordance with the Conversion Demands and enjoining Defendant from buying back PIXY stock in contravention of its obligations under the Notes.

Dated:   New York, New York
         August 5, 2019

                                        Respectfully submitted,

                                        SULLIVAN & WORCESTER LLP

                                        By: */s/Peter R. Ginsberg*
                                            Peter R. Ginsberg
                                            David E. Danovitch
                                        1633 Broadway, 32nd Floor
                                        New York, NY 10019
                                        Telephone:  (212) 660-3000
                                        Facsimile:  (212) 660-3001
                                        prginsberg@sullivanlaw.com

                                        *Attorneys for Plaintiffs*

8