```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/22/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOMINION CAPITAL LLC,

      Plaintiff,

-against-

SHIFTPIXY, INC.,

      Defendant.
------------------------------------------------------------X

19 Civ. 6704 (PGG) (RWL)

**REPORT AND RECOMMENDATION TO HON. PAUL G. GARDEPHE: <u>MOTION FOR SUMMARY JUDGMENT</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

  Plaintiff Dominion Capital LLC ("Dominion") moves for summary judgment on its claims for breach of contract based on the default of ShiftPixy, Inc. ("ShiftPixy") under certain convertible debt instruments and for declaratory judgment that ShiftPixy's proposed repurchase of stock violates its contractual obligations to Dominion. ShiftPixy essentially has conceded the breach of contract claims. It opposes, however, Dominion's claim for declaratory judgment. For the reasons that follow, Dominion's motion for summary judgment should be GRANTED IN PART and DENIED IN PART: Summary judgment should be granted on the Amended Complaint Claims III, IV, V, and that portion of Claim VI seeking declaratory judgment regarding the stock repurchase program as announced in ShiftPixy's July 12, 2019 press release. To the extent Dominion's motion encompasses any other claims, the motion should be denied.

1

**Facts and Procedural Background**[1]

ShiftPixy is an early-stage technology-based business in the temporary staffing sector. (Declaration of Scott W. Absher in Opposition to Plaintiff's Motion for Summary Judgment, October 8, 2019 ("Absher Decl.") (Dkt. 43) ¶ 2.) Its stock is listed on the NASDAQ capital markets exchange. (*Id.*) Dominion is a private company that invests in securities and other instruments. (First Amended Complaint (Dkt. 23) ¶ 9.) This dispute stems from Dominion's investment in ShiftPixy and ShiftPixy's intentional default on three promissory notes (collectively and together with their related transaction documents, the "Notes").[2]

**A.   The Notes**

The first Note, purchased by Dominion on June 4, 2018, has a face value of $2,500,000, and permitted Dominion to convert it to 251,004 shares of ShiftPixy's

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material fact filed pursuant to Local Rule 56.1 and the evidence cited in those statements. (*See* Dkt. 35, 38, 42.) Also unless otherwise noted, the facts as set forth are undisputed.

[2] Four other investors purchased similar notes. At least one of those other investors has sued ShiftPixy for breach of its contractual obligations. *See Alpha Capital Anstalt v. ShiftPixy, Inc.*, No. 19 Civ. 5199 (PGG) (S.D.N.Y.). The transactions at issue in these cases are a form of investment sometimes referred to as "death spiral" or "toxic" financing in which a lender provides an early-stage company with capital in exchange for debt that can be converted to stock in the company. The economics can cause the price of the company issuing the stock to plunge to near zero when the lender exercises multiple rounds of conversion and sale of the stock on the open market at successively lower prices. *See Crown Bridge Partners, LLC v. Sunstock, Inc.*, No. 18 Civ. 7632, 2019 WL 2498370, at *1 (S.D.N.Y. June 3, 2019) (describing death spiral financing as defined on Investopedia). As one publisher of financial information explains, "A company that seeks death spiral financing basically has no other option to raise money to survive. Traders who want to short the stock salivate at the prospect that the stock will dive. The only hope for the company to break the death spiral is to improve its operational results." Investopia, https://www.investopedia.com/terms/d/deathspiral.asp (last visited on Nov. 20, 2019).

common stock (the "June 2018 Note").[3] On December 20, 2018, ShiftPixy issued to Dominion a second convertible Note in the principal amount of $222,222.22 (the "December 2018 Note"). ShiftPixy issued the December 20, 2018 Note as part of a settlement of ShiftPixy's defaults under the June 2018 Note. (*Id.* ¶ 5.) Dominion purchased the third Note for $500,000 on March 11, 2019 with a face value of $633,333.33 and a warrant to purchase 378,788 shares of ShiftPixy common stock (the "March 2019 Note"). (*Id.* ¶ 6.)

Generally speaking, the Notes provide ShiftPixy with a lump-sum loan in exchange for the right to receive principal (with a premium), plus interest, in the form of cash or common stock (at ShiftPixy's election and subject to certain conditions) . At the same time, Dominion has the option to convert the Notes into shares of ShiftPixy common stock (at a significant discount), thus reducing the amount owed by ShiftPixy. Failure by ShiftPixy to make payments or to honor stock conversion requests is each a default under the Notes. A breach of any one Note automatically triggers a cross-default of the other Notes. (*Id.* ¶¶ 10, 31.)

Subject to certain exceptions not applicable here, each of the Notes prohibits ShiftPixy from repurchasing more than de minimis (and, in one instance, any) company stock as long as the Notes remain unsatisfied. (*Id.* ¶¶ 16, 20, 29.) For instance, the March 2019 Note provides that "[u]ntil all of the Notes have been converted, redeemed or otherwise satisfied in accordance with their terms . . . The Company shall not . . .redeem, repurchase or declare or pay any cash dividend on any of its capital stock." (*Id.* ¶ 29.)

---

[3] Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, ("Pl. SOF") (Dkt. 35) ¶ 1.

**B.     ShiftPixy's Default on the Notes**

For nearly a year, ShiftPixy honored the Notes, making amortization payments and satisfying several stock conversions requested by Dominion. (*Id.* ¶¶ 32-47.) On June 3, 2019, however, ShiftPixy failed to make an amortization payment under the June 2018 Note. (*Id.* ¶¶ 48-49.) A few weeks later, on June 25, 2019, ShiftPixy expressly denied Dominion's conversion request. (*Id.* ¶¶ 51-52.)

Just two days later, ShiftPixy filed a statement with Securities and Exchange Commission ("SEC") stating that ShiftPixy was voluntarily and intentionally defaulting under the Notes, as well as other notes issued to similarly-situated investors. (*Id.* ¶ 56.) The SEC filing acknowledged that ShiftPixy would continue to refuse to honor conversion requests and that such conduct would be a breach of its obligations under the Notes.[4] ShiftPixy further acknowledged that the cross-default provisions in the Notes meant that all notes held by each investor were in default at that time and, in total, amounted to $6.8 million. (*Id.*)

On July 5, 2019, Dominion requested conversion of the March 2019 Note's remaining value to common stock. ShiftPixy once again refused to honor the request. (Pl. SOF ¶¶ 60-61.)

**C.     ShiftPixy's BuyBack Plan**

According to ShiftPixy, it stopped honoring conversion requests because Dominion and other investors were selling their converted stock shortly after conversion and depressing the value of their shares from a high of roughly $5.37 in July 2018 down to

---

[4] Declaration of Peter R. Ginsberg, dated Sept. 17, 2019 ("Ginsberg Decl.") (Dkt. 360), Ex. 23 at 4.

4

below $0.50 by July 2019.[5]  The stock price rebounded some, but as of October 4, 2019 had fallen to $0.45. (Absher Decl. ¶ 7.)  On June 6, 2019, after its share price had declined to and remained below $1.00, NASDAQ issued a notice to ShiftPixy stating that its shares would be de-listed if ShiftyPixy did not meet certain requirements over the next several months. (*Id.* ¶ 9.)

On July 9, 2019, ShiftPixy's board of directors met to consider what steps could be taken to restore the company's share price to an acceptable level and to prevent de-listing.[6]  (Pl. SOF ¶ 62; Absher Decl. ¶ 10.)  After receiving input from its investment bankers, ShiftPixy's board unanimously approved a resolution authorizing the company's CEO to repurchase up to 10 million shares of ShiftPixy common stock over a period of 18 months paid for with cash on hand (the "BuyBack"). (*Id.*)  If the BuyBack program proved successful, ShiftPixy theoretically could resume honoring conversion demands. (*See* Absher Decl. ¶ 10.)  ShiftPixy issued a press release on July 12, 2019 announcing the BuyBack. (Pl. SOF ¶ 63.)

---

[5] Dominion disputes that ShiftPixy has presented competent evidence that Dominion or other investors sold converted shares on a short-term basis causing the stock price to decline.  The Court need not resolve that issue for purposes of deciding the motion but presents it for context.

[6] Dominion contends that ShiftPixy has not presented sufficient evidence to show that Absher is competent to testify as to the "purpose and intent" of the members of the board or of company's investment bankers.  (Dkt. 38 at ¶ 9.)  The Court does not agree inasmuch as Absher attests to having personal knowledge of these and other facts, and reasonable inferences can be drawn that he has such knowledge given his role as CEO.  In any event, this information again is not material to the motion but is provided for context.

**D.     This Action and the Current Motion**

On July 18, 2019, Dominion filed this action and moved by order to show cause for a preliminary injunction to (1) require ShiftPixy to honor the conversion requests, and (2) stop ShiftPixy from executing the BuyBack. (Dkt. 1, 4.) Following Dominion's motion, ShiftPixy discontinued taking steps to implement the BuyBack. (Absher Decl. ¶ 12.) At the hearing on the motion, ShiftPixy agreed, and the Court ordered, that ShiftPixy would not repurchase shares without giving the Court and Dominion 30-days notice of its intention to do so.[7] (*Id.* ¶ 14.) Accordingly, with respect to the BuyBack, the Court found no imminent irreparable harm and denied Dominion's motion without prejudice. (Aug. 8 Tr. at 16-17.) As for Dominion's demand to honor its conversion requests, the Court found that Dominion would not suffer irreparable harm pending trial and denied Dominion's request to require ShiftPixy to convert the existing debt into shares of common stock. (*Id.* at pp. 25-26.)

Dominion filed an Amended Complaint on August 30, 2019. (Dkt. 23.) The Amended Complaint, which is the current operative complaint, asserts six claims for relief: (I) injunction to deliver 1,600,496 shares of ShiftPixy common stock pursuant to conversion requests; (II) injunction prohibiting buyback of shares; (III) breach of contract on the June 2018 Note; (IV) breach of contract on the December 2018 Note; (V) breach of contract on the March 2019 Note; and (VI) declaratory judgment affirming Dominion's rights under the contract, confirming ShiftPixy's breach of and default under the Notes, and declaring that the proposed BuyBack violates Dominion's rights under the Notes.

---

[7] *See* Transcript of Hearing, August 8, 2019 (Dkt. 21) ("Aug. 8 Tr.") at 2-3, 16-17.

On October 14, 2019, Dominion filed the instant motion for summary judgment. (Dkt. 34.) Dominion asks for summary judgment on all claims in the First Amended Complaint. Its moving brief, however, presents argument for the three breach of contract claims and the declaratory judgment claim; it does not discuss the first and second claims styled as claims for injunctive relief. And in reply, Dominion asks for summary judgment on Claims III, IV and V (the breach claims) and VI (declaratory judgment). (Dkt. 39.) Again, it does not address its injunction claims. That is understandable, as injunctive relief is a remedy, not a substantive claim.[8] ShiftPixy, too, has not addressed the propriety of injunctive relief.[9] Accordingly, this Report and Recommendation addresses only Claims III through VI.

## Summary Judgment Standard

To obtain summary judgment under Rule 56 of the Federal Rules of Civil Procedure, a movant must show that there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). A fact is material if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, courts view the evidence in the

---

[8] *See Miller v. Wells Fargo Bank, N.A.,* 994 F.Supp.2d 542, 558 (S.D.N.Y. 2014) ("injunctions are remedies, not causes of action"); *Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285, 293 (S.D.N.Y. 1995) ("There is no 'injunctive' cause of action under New York or federal law"). In reply, Dominion notes that if the Court grants summary judgment on its breach of contract claims (III, IV and V), Dominion will then seek an order requiring ShiftPixy to deliver the stock shares. (Dkt. 39 at 1, n.4.) As for Claim II and injunctive relief against the BuyBack, Dominion states that will be obviated in the event the Court grants summary judgment in its favor on Claim VI requesting declaratory judgment that the BuyBack violates Dominion's contractual rights under the Notes. (*Id.*)

[9] Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl. Mem.") (Dkt. 37.)

light most favorable to the non-moving party and draw all factual inferences in the nonmoving party's favor. (*Id.*) However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (*Id.* at 247-48) (emphasis omitted).

Reliance upon conclusory statements or mere allegations is insufficient to defeat summary judgment. *Geyer v. Choinski*, 262 F. App'x 318, 318 (2d Cir. 2008). Instead, the non-movant must show "that there is some evidence which would create a genuine issue of material fact." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The moving party may demonstrate the absence of a genuine issue of material fact "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).

Under Rule 56, a party asserting that a fact cannot be, or, is genuinely disputed "must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Powell v. National Board of Medical Examiners*, 364 F.3d 79, 84 (2d Cir. 2004) (if movant demonstrates absence of genuine issue of material

fact, nonmovant bears burden of demonstrating "specific facts showing that there is a genuine issue for trial"). Failing that, summary judgment is appropriate.

## Analysis

**A.    Dominion is Entitled to Summary Judgment On Its Breach of Contract Claims**

Dominion has established ShiftPixy's breach of contract under New York law for its failure to satisfy its obligations to make a payment due under the June 2018 Note and to honor its conversion requests.

The parties agree that New York law applies as called for by the Notes. "Under New York law, the elements of a breach of contract claim "include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Wilder v. World of Boxing LLC*, 777 Fed. App'x. 531, 532 (2d Cir. 2019) (summary order) (citing *Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426, 913 N.Y.S.2d 161 (2010)).  The record indisputably establishes each of those three elements: the Notes are contracts to which the parties agreed; Dominion submitted conversion notices as required by the Note, and there is no suggestion that Dominion did not meet its own obligations; ShiftPixy concedes its failure to honor the conversion request; and Dominion has not received the stock.  ShiftPixy admits each of Dominion's statements of material fact as to breach.[10]  And ShiftPixy's opposition brief does not make any argument even addressing breach of contract.[11]   In short, there is no dispute.

---

[10] Compare Pl. SOF at ¶¶ 1-61 with Response of Defendant to Plaintiff's Fed. R. Civ. P. Rule 56(c) and Local Rule 56.1 Statement ("Def. SOF") (Dkt. 42) at ¶¶ 1-61.

[11] An opposing party's failure to address a claim on summary judgment may be found to be abandonment.  "Where, as here, a counseled non-moving party submits 'a partial response arguing that summary judgment should be denied as to some claims while not

9

Accordingly, Dominion is entitled to summary judgment on its breach of contract claims under the June 2018 Note, the December 2018 Note, and the March 2019 Note. Summary judgment should be granted in Dominion's favor on Claims III, IV and V of the First Amended Complaint.

**B.     Dominion is Entitled to Summary Judgment On Its Claim for Declaratory Judgment Regarding the BuyBack**

Although Dominion's Claim VI seeking declaratory judgment asks for four different pronouncements (*see* First Amended Complaint, ¶ 93), the parties focus their attention on only one: a declaration that the BuyBack violates Dominion's rights under the Notes.[12]

Dominion asserts it is entitled to declaratory judgment because ShiftPixy previously announced its intention to implement the BuyBack program, took steps toward

---

mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'" *Camarda v. Selover,* 673 Fed. App'x. 26, 30 (2d. Cir. 2016) (summary order) (quoting *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014)).

[12] The other three issues contained within Claim VI are for declaratory judgment are that (1) Dominion received the Notes in exchange for good and valuable consideration, and Dominion has the right to receive common stock and payments due and owing under the Notes; (2) ShiftPixy violated its duties and obligations to act in accordance with the Notes; and (3) ShiftPixy is in default under the Notes. (First Amended Complaint at ¶ 93(d) and Prayer for Relief, item (d).)  Those issues essentially replicate those resolved by summary judgment on the breach of contract claims. Accordingly, there is no purpose to be served by declaratory judgment on these issues. *See Fleisher v. Phoenix Life Insurance Co.*, 858 F. Supp. 2d 290, 301-02 (S.D.N.Y. 2012) (dismissing declaratory judgment claim because it was duplicative of breach claim and thus would not serve a useful purpose); *Intellectual Capital Partner v. Institutional Credit Partners LLC*, No. 08 Civ. 10580, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) ("declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim"); *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment Corp.*, No. 08 Civ. 1558, 2009 WL 577916, at *11 (S.D.N.Y. March 2, 2009) ("Because this Court has already analyzed the parties' rights and obligations under the [contracts] in connection with Plaintiffs' breach of contract claims, a declaratory judgment on the same issues would be superfluous."). Given that Dominion presents no argument about these aspects of its declaratory judgment claim, the Court deems them abandoned insofar as they are distinct from Dominion's breach of contract claims.

implementation, and the threat that ShiftPixy will follow through on the program remains. As Dominion puts it, declaratory judgment is needed now in order "to obviate the need for emergency action in the future." (Dkt. 37 at 18.)

ShiftPixy contends that declaratory judgment is not available because there is no present dispute concerning a stock buyback program. ShiftPixy acknowledges that the Notes prohibit ShiftPixy from offering to repurchase or actually repurchasing stock. But the prohibitions do not bar the ShiftPixy board of directors from "authorizing or even adopting" a stock buyback program. (Dkt. 41 at 11.) According to ShiftPixy, there is no actual controversy because it only took preliminary steps toward but did not implement the BuyBack.

### 1. Declaratory Judgment Standard

The Declaratory Judgment Act provides in relevant part that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)). The Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 278, 115 S.Ct. 2137 (1995); *see also Medimmune*, 549 S. Ct. at 136 (citing *Wilton*). In determining whether a declaratory judgment action is warranted, a court considers the totality of circumstances, *Medimmune*, 549 U.S. at 136, including whether declaratory judgment (1) will "serve a useful purpose in clarifying and settling the legal relations in issue;" or (2) "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Casualty Co. v. Coastal Savings Bank*, 977 F.2d 734, 737


(2d Cir. 1992)); *see also Duane Read, Inc. v. Saint Paul Fire & Marine, Inc.*, 411 F.3d 384, 389 (2d Cir. 2005) (reciting same considerations).

A prerequisite to the Court's authority to issue a declaratory judgment is that there must be "a case of actual controversy." 28 U.S.C. § 2201(a). For a dispute to qualify, it must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*,549 U.S. at 126 (internal quotations and citations omitted); *see also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95-96 (2d Cir. 2018) (quoting *MedImmune*). In sum, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941)); *see also Duane Read,* 411 F.3d at 388 (articulating same standard).

**2. Declaratory Judgment is Warranted With Respect to the BuyBack**

The parties clearly have a dispute regarding the BuyBack. Dominion contends that the BuyBack violates prohibitions imposed by the Notes and seeks a declaration to that effect. More pointedly, Dominion seeks a declaratory judgment regarding the "proposed buyback in the July 12, 2019 press release." (Amended Complaint at ¶ 93(4) and Prayer for Relief, Item (d)(4).) At the time Dominion filed its initial complaint on July 18, 2019 (Dkt. 1), ShiftPixy had just announced authorization of the BuyBack. The controversy between Dominion and ShiftPixy was concrete, real, and substantial. As for immediacy, the press release vaguely referred to an "initial" period of 18 months, and

ShiftPixy "paused" the BuyBack only after Dominion filed its motion for preliminary injunction.

The fact that ShiftPixy has committed, and been ordered, to provide 30 days notice before proceeding with repurchasing shares does not diminish the propriety of declaratory judgment. This is not a case where, for instance, the defendant has mooted the controversy by unequivocally committing under oath that it will not engage in the offending conduct in the future. To the contrary, ShiftPixy clearly has left that door open, by virtue of merely agreeing to provide notice in the event that it renews its repurchase efforts. Even in opposing the instant motion, Shift Pixy's CEO equivocates: "ShiftPixy will not commence share repurchases under the program until it has determined that to do so would not violate negative covenants in the Notes, and would be in its and its shareholders' then-current interest." (Absher Decl. ¶ 13.) The determination of whether the BuyBack "violates negative covenants in the Notes" is precisely the issue at hand. A declaratory judgment thus will both "serve a useful purpose in clarifying and settling the legal relations in issue" and "afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Casualty*, 977 F.2d at 737.

As the Supreme Court has explained, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). Accordingly, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably

13

be expected to recur." *Id.* (citation omitted). ShiftPixy has not come close to showing that it is "absolutely clear" the it will not carry out the BuyBack currently on hold.

Dominion's distinction between actual repurchase, as proscribed by the Notes, and merely authorizing or taking steps to repurchase, does not eliminate the controversy. ShiftPixy's argument essentially is that it has not yet breached the no-repurchase covenants, so there is no controversy to resolve. By that logic, a plaintiff could only have a viable claim for declaratory judgment after the defendant has already breached its contractual obligations but not if it has taken meaningful steps to do just that. That is not the law. *Gelmart Industries, Inc. v. Eveready Battery Co., Inc.*, 120 F.Supp.3d 327, 331 (S.D.N.Y. 2014) (recognizing that taking "meaningful steps" toward completing unlawful trademark infringement will satisfy the actual case or controversy requirement). "[S]o long as '[t]he factual and legal dimensions of the dispute are well defined' and 'nothing about the dispute would render it unfit for judicial resolution,' jurisdiction is not defeated by a party's decision to refrain from taking some action and thus 'make[ ] what would otherwise be an imminent threat [of suit] at least remote, if not nonexistent.' " *Id.* (citing *Medimmune* and quoting *AARP v. 20 Kelsey Associates, LLC,* No. 06 Civ. 81, 2009 WL 47499, at *6 (S.D.N.Y. Jan. 8, 2009) (brackets in original).

As noted earlier, Dominion seeks a declaratory judgment specific to the program announced in the July 12, 2019 press release. There may well be other programs involving repurchase of shares that would not transgress the repurchase prohibitions under the Notes. That is a theoretical dispute for another day. For the present, however, declaratory judgment that implementation of the BuyBack as announced violates ShiftPixy's contractual covenants under the Notes is warranted.

## **Conclusion**

For the foregoing reasons, Dominion's motion for summary judgment should be GRANTED on Claims III, IV, V, and that portion of Claim VI seeking declaratory judgment regarding the stock repurchase program as announced in ShiftPixy's July 12, 2019 press release. To the extent Dominion's motion encompasses any other claims, the motion should be DENIED. To the extent not discussed herein, the Court has considered ShiftPixy's remaining arguments and finds them to be without merit.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Paul G. Gardephe, U.S.D.J., United States Courthouse, 40 Foley Square, New York, NY 10007 and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will preclude appellate review.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:   November 22, 2019
         New York, New York

Copies transmitted to all counsel of record.